IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| MARCIA S. DAVIS, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 9:05-CV-57 |
| | § | |
| MOORE WALLACE, INC., | § | |
| | § | JUDGE RON CLARK |
|     *Defendant*. | § | |

**MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant's Motion for Summary Judgment [Doc. # 16]. Defendant alleges that Plaintiff accrued additional late hours after being placed on final written warning, and pursuant to its attendance policy, she was fired. Plaintiff argues that she was improperly terminated on the basis of her gender and that the company retaliated against her because she complained of a discriminatory remark. There is no genuine issue of material fact as to whether Defendant intentionally discriminated against Plaintiff. Moreover, there is no competent evidence of a causal link between Plaintiff's termination and her complaint. Defendant is entitled to judgment as a matter of law on both of these claims.

**I. Background**

Plaintiff Marcia Davis ("Davis") began working for Defendant Moore Wallace, Inc. ("Moore Wallace") in 1998 at its Nacogdoches facility as a press operator. While she worked for Defendant, Plaintiff's daughter required extensive medical treatment, which resulted in trips to Houston hospitals. Plaintiff sometimes had to miss work to care for the child. According to Defendant, these absences from work exceeded those allowable under its written attendance

1

policy.[1]

Defendant alleges that Plaintiff's direct supervisor, Sheila Murdock ("Murdock"), recommended to the Senior Human Resources Manager, Cathy Williams ("Williams"), that Plaintiff be terminated for these violations.  Williams provided a report to the Vice President of Human Resources, Mike Sirchio ("Sirchio"), and Plant Manager, Bill Burch ("Burch").  Based on the recommendations of the two women, Murdock and Wheeler, Plaintiff's termination was approved by Sirchio and Burch.

Plaintiff contends that she did not violate the attendance policy.  She alleges that she was fired because of her gender and because she reported a discriminatory comment made to her at work.  The comment was made by an Operations Manager, Tim Gillespie ("Gillespie").  Gillespie's job duties are not discussed by the parties, and neither party presents evidence regarding the nature of his position in relation to Plaintiff.

## II. Standard of Review

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986).  Movant may show that the undisputed material facts affirmatively establish a right to judgment.  Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case."  *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S. Ct. 1689 (1993), (quoting  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2522 (1986)).

---

[1] Plaintiff made no claim under the Family Medical Leave Act, 29 U.S.C. § 2601 *et. seq*.

In order to avoid summary judgment, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1335 (1986); *Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356. Fed. R. Civ. P. 56 requires that the nonmoving party set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 256, 106 S. Ct. at 2514. Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party on the issue. *Id.* If the factual context renders a claim implausible (for example if the claim simply makes no economic sense) nonmovants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356. However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468, 112 S. Ct. 2072, 2083 (1992).

### III. Analysis

**A. Gender Discrimination**

In order to prove a discrimination claim based on circumstantial evidence, the court turns to the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Under this scheme, Davis must first prove a *prima facie* case of discrimination by showing: (1) she belongs to a protected class; (2) she was qualified for the position she lost; and (3) she was replaced by someone outside the protected class, or that other similarly situated persons were treated more favorably. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005).

If Davis establishes a *prima facie* case, the second step of *McDonnell Douglas* shifts the burden to Moore Wallace to establish a legitimate non-discriminatory reason for terminating Davis. *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). If Defendant produces a legitimate non-discriminatory reason for the termination, the mandatory inference of discrimination disappears. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11, 113 S. Ct. 2742 (1993).

Finally, Plaintiff is given the opportunity to demonstrate either: (1) that Defendant's non-discriminatory reason is a pretext for intentional discrimination (pretext alternative), *Price*, 283 F.3d at 719-20; or (2) that Defendant's reason, while true, is only one of the reasons for the conduct, and another is the Plaintiff's protected characteristic (mixed motive alternative). *See Desert Palace Inc. v.* Costa, 539 U.S. 90, 101-02, 123 S.Ct. 2148, 2155 (2003); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)(stating that the *Desert Palace* holding altered only the final stage of the *McDonnell Douglass* framework.).

Plaintiff may establish pretext by showing that the employer's proffered explanation is false or unworthy of credence. *Laxton v. Gap, Inc.,* 333 F.3d 572, 578 (5th Cir. 2003). An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. *Id.*

In a mixed motive case, if a plaintiff demonstrates that gender was a motivating factor, then it falls upon the Defendant to prove that the same adverse employment decision would have been made regardless of any discriminatory animus. *Rachid,* 376 F.3d at 312. Ultimately, the Plaintiff must be a victim of intentional discrimination and must present evidence that a reasonable fact finder could infer intentional discrimination. *Reeves*, 530 U.S. at 153, 120 S.Ct. at 2111.

1. *Prima facie* case of gender discrimination

"To establish a *prima facie* case, a plaintiff need only make a very minimal showing." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996). It is undisputed that Plaintiff is a member of a protected class, was qualified for the position she held, and was terminated. Also, there is some evidence that she was replaced by a male worker. The court concludes that the minimal burden is met under these circumstances. Since Davis has established a *prima facie* case, the burden shifts to Moore Wallace.

2. Legitimate non-discriminatory reason for termination

Moore Wallace has presented a legitimate non-discriminatory reason for the firing – violations of its attendance policy. Defendant's written attendance policy employs what it calls a progressive system, which operates on a twelve month rolling basis. After 40 absent hours in any twelve month period a verbal warning is given. After 48 hours a written warning is given, and

after 64 hours a final written warning is given.  Termination results if a person on final written warning exceeds 72 absent hours during the immediately preceding twelve months.  Where an employee exceeds 72 absent hours without first being on final written warning (e.g. absent hours go from 63 or less to more than 72, due to missing consecutive shifts), the employee is not terminated, but is immediately placed on final written warning.  In that case, termination results if any additional absent hours are accrued before the employee's absent hours for the preceding twelve months fall below 48 hours.

 Absences for medical reasons (including caring for a sick child) count towards an employee's total absent hours unless they are approved as Family Medical Leave Act ("FMLA") time under the policy.  Under the FMLA provision of the policy, a person could take up to twelve weeks of approved FMLA leave over a twelve month rolling period without penalty.  Once a person reaches twelve weeks of qualifying FMLA leave time, however, any additional time missed from work would not be eligible to count as FMLA leave time, and would be charged against the employee as unapproved missed hours.

 Davis was given written and verbal warnings in accordance with the policy on at least 16 separate occasions between November 1998 and May 2003.  In June 2003, Plaintiff missed three consecutive days of work.  Her absent hours went from around 40 hours to over 77 hours.  She was placed on final written warning and instructed that under the policy any more missed hours prior to February 26, 2004 (when her absent hours would drop below 48 for the preceding twelve months) would result in termination.  Defendant states that Davis then accrued additional late hours in December 2003, and so she was terminated.  Two male employees were fired for violations of the attendance policy during the same time period.  Defendant has articulated a non-

discriminatory reason for firing Plaintiff.

     3. Pretext and mixed motive arguments

To cast doubt on Defendant's reason, Plaintiff argues that she received permission to take days off in June 2003.[2] The evidence before the court is that Plaintiff had exhausted her FMLA time before she took any days in June 2003. Defendant submitted a calendar of the dates for which Ms. Davis had been charged with FMLA leave. The calendar shows that she had used twelve weeks within the twelve months immediately prior to any time in June. Davis does not argue that these dates were calendared incorrectly or that somehow they do not reflect leave that she took. Therefore, any time she took in June (even with permission) would be counted as absent hours, to be included in the 72 hour total.

Plaintiff's supervisor, Ms. Sheila Murdock, states in her deposition that when Davis requested the time off in June 2003 she informed Davis that she needed to make sure that Davis had FMLA time available. Murdock also states that while she would never tell Davis that Davis could not take time off to care for Davis' child, she always warned Davis that the missed days would count against Davis' absent hours if Davis did not have FMLA leave time available. Murdock explicitly states she did not, and could not, approve Davis' June absences as qualifying FMLA time and that she told Plaintiff this. It is clear that the policy, which Plaintiff was very familiar with by this time, required Plaintiff to obtain approval for FMLA leave from someone in

---

[2]Plaintiff also argues that because the Texas Workforce Commission awarded her unemployment benefits, this is some evidence that she was not in violation of the attendance policy. Under Texas law, any findings made by the Commission cannot be used as evidence in any other lawsuits, except for suits brought to enforce unemployment benefits. Tex. Lab. Code § 213.007. This evidence cannot be used to present a fact question about pretext. *See Williams v. Aviall Services Inc.*, 76 Fed. Appx. 534, 536 (5th Cir. 2003).

the Human Resources Department. Murdock does not work in that Department, and there is no evidence that anybody else, especially someone in Human Resources, approved Davis' absence as FMLA leave time in June. Plaintiff's own conclusory remarks that she had "approved" leave time is not enough to cast more than a shadow of a doubt on Defendant's reason. *See Auguster v. Vermillion Parish School Board*, 249 F.3d 400, 403 (5th Cir. 2001).

Davis also claims that she had permission to work different hours in December. Murdock's deposition, and the documentary evidence submitted by Defendant, show that even taking into account the approved schedule changes in December 2003, the total time Plaintiff was to work was 68 hours, but she only worked 65 hours during the week of December 15, 2003.[3] Plaintiff was not charged with any missed hours on December 9 as she claims, and she does not present any evidence to rebut Defendant's affirmative showing that she did not work all of the hours she was assigned for the week of December 15, 2003. The mere conclusory remark that she did work all of her hours in December is not enough to create a fact issue. *See Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004)(conclusory allegations and unsubstantiated assertions insufficient to create a genuine issue of material fact).

To establish pretext or "mixed motive," Plaintiff states that Gillespie told her a week before she was fired that "I never did like the idea of having a female press operator anyway and

---

[3]The documents show that Defendant properly paid her overtime and Plaintiff has not asserted a claim under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

if it is the last thing I do you will be gone."[4]  An oral statement exhibiting discriminatory animus may be used to demonstrate pretext when made by a person primarily responsible for the adverse employment action, or by a person who has influence over the primary decision maker.  *See Laxton*, 333 F.3d at 583.  Gillespie was an Operations Manager at the plant, and as noted, his duties are not explained by either party.  There is no evidence that Gillespie was the person responsible for the employment action or that he had any influence over the decision makers.  Defendant's undisputed evidence is that Davis' supervisor, Ms. Sheila Murdock, recommended that Davis be terminated because Davis accrued additional absent hours after being placed on final written warning.  Based on Murdock's report, the Senior Human Resource Manager, Ms. Cathy Williams, recommended the termination of Davis to the Vice President of Human Resources, Mike Sirchio, and the Plant Manager, Bill Burch.  After reviewing the recommendations from Ms. Murdock and Ms. Williams, Sirchio and Burch approved her termination.  Gillespie's only role appears to have been to deliver the news to Davis.

The single comment is also insignificant when compared with Davis' violations of the attendance policy, and Defendant's treatment of male operators.  *See Auguster*, 249 F.3d at 403.

---

[4] Plaintiff claims in passing that the comment is also direct evidence of discrimination.  If a plaintiff presents direct evidence of discrimination, the *McDonnell Douglas* framework does not apply, and the burden shifts directly to the defendant to show that he would have taken the same action regardless of the impermissible criterion.  *See Fabela v. Socorro Indep. School District,* 329 F.3d 409, 415 (5th Cir. 2003).  Even assuming that Gillespie's statement is direct evidence and that it was not a stray remark, Defendant still has satisfied its burden to show that it would have made the decision regardless of the forbidden factor.  It is uncontroverted that Defendant has an attendance policy in place, that Plaintiff was repeatedly warned for her violations of this policy, and that it fired other male press employees for the same attendance violations during the same time.  Given the undisputed evidence supporting Defendant's legitimate justification, the comment alone is not enough to create a genuine issue of material fact as to whether Defendant discriminated against the Plaintiff on the basis of gender.

Defendant fired two male employees for violations of the attendance policy in the same time period that it fired Plaintiff. Absent any evidence that Defendant would have been more lenient with a male employee or that Plaintiff did not in fact miss the hours it is alleged she missed, the court cannot hold that this statement alone is sufficient to meet the burden of establishing a discriminatory motive for her termination. *Id.* at 406.

Assuming *arguendo* that Gillespie's remark is evidence of mixed motive, Defendant has also established that it would have fired Plaintiff despite any discriminatory motive. Defendant has submitted evidence that two male employees were fired at the same time for violating the attendance policy the same as Plaintiff, that Plaintiff has had a long history of attendance policy violations, and the documentary evidence is that she missed additional hours in December after being placed on final written warning. The court is convinced that the only reasonable conclusion a jury could make is that Defendant would have fired Plaintiff with or without discriminatory animus. *See Richardson v. Monitronics*, 434 F.3d 327, 336 (5th Cir. 2005)(applying mixed motive framework in FMLA case).[5]

## B. Retaliation

Davis also asserts that she was fired because she complained about Gillespie's

---

[5]Plaintiff originally made claims for gender discrimination based on wage discrimination, for failure to be given a raise, for failure to be trained properly and for being given the worst machine press. It is unclear if these are actual separate claims for discrimination because she does not treat them as such in her summary judgment response. If they are, Defendant has made an affirmative showing that there was no wage discrimination, and that Plaintiff was given raises when eligible. Moreover, Defendant has pointed out that the failure to train and giving her the worst machine do not rise to the level of adverse employment actions. *See Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999). Plaintiff has not responded to any of these arguments, and there is no genuine issue of material fact. To the extent that these state separate claims under Title VII, Defendant is entitled to judgment as a matter of law on them.

discriminatory remark.  The burden-shifting analysis that applies in a Title VII circumstantial case also applies to a claim of unlawful retaliation based on circumstantial evidence.  *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). To establish a *prima facie* retaliation claim, Plaintiff must show she (1) engaged in a protected activity, (2) suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action.  *Cain v. Blackwell*, 246 F.3d 758, 761 (5th Cir. 2001).  Once a *prima facie* case is established, a presumption of discrimination arises, which the defendant must refute by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).  If Defendant can produce a legitimate reason for the action, the *prima facie* inference of discrimination disappears.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 2749 (1993).  The burden is then on Plaintiff to present evidence that the Title VII protected activity was a "but for" cause of the adverse employment action.  *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).

      Gillespie said "I never did like the idea of having a female press operator anyway and if it is the last thing I do you will be gone." Plaintiff reported the comment on December 31, 2003 to Assistant Human Resources Director Joe Cortez.  It is undisputed that reporting Mr. Gillespie's statement was a protected activity and that Davis was terminated.  To prove her *prima facie* case of retaliation, Plaintiff still needs to show a causal link between the complaint and her termination.  "In order to establish the causal link between the protected conduct and the illegal employment action as required by the prima facie case, the evidence must show that the employer's decision was based in part on knowledge of the employee's protected activity."

*Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).  "A causal link can be established by evidence that the ultimate decision maker, with final authority to hire and fire subordinate employees merely rubber stamped a recommendation to terminate made by an employee with knowledge of the complaint." *Id.*

It is not disputed that the ultimate decision makers were Sirchio and Burch.  Defendant has provided deposition testimony and a documented calendar entry, which detail that the decision to terminate Plaintiff was finalized on December 22, 2003.  This was before Davis made her complaint on December 31, 2003.  No one, including the decision makers and the supervisors who recommended her termination, could have been aware of the complaint at the time of the recommendation or at the time the decision was made.

Plaintiff's only response is that Defendant has made a self-serving statement.  There is no evidence that this decision was somehow subject to change, a conditional decision, or that the document was forged or somehow incorrect.  Plaintiff has failed to present any evidence of a genuine issue of material fact concerning whether Defendant knew of the complaint before the decision to terminate her was made.

### IV. Conclusion

Plaintiff may argue that Defendant's actions seem harsh under the circumstances.  But, that is not the same as being discriminatory.  Defendant treated Davis in the same way it treated male employees.  She violated the attendance policy, and as a result she was fired.  Plaintiff's response does not cast sufficient doubt on the reason given so that a reasonable fact finder could infer intentional discrimination.  There is no evidence that Plaintiff had any FMLA leave time available when she took three days off in June 2003.  The evidence before the court shows that

even with any schedule changes, Plaintiff missed three hours of work the week of December 15, 2003, after being placed on final written warning at a time when any additional missed hours would result in termination.  Additionally, Defendant has shown that if an impermissible criteria was considered when terminating Plaintiff, she would have been terminated regardless of this consideration.  Finally, Plaintiff has failed to produce any evidence indicating a causal chain between her complaint and any retaliation.  "[E]mployment discrimination laws are not intended to be a vehicle for judicial second-guessing of business decisions. . . ." *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment **[Doc. # 16]** is **GRANTED**.  A final judgment will be entered by separate order.

So **ORDERED** and **SIGNED** this **15** day of **March, 2006.**

_____
Ron Clark, United States District Judge